# United States Bankruptcy Court
# Eastern District of Pennsylvania

In re                                                    : Chapter 7
                                                         :
JOEY'S STEAKHOUSE, LLC                                   : Bankruptcy No. 09-17170
                                                         :
                              Debtor(s)                  :
_____                 :
                                                         :
GARY F. SEITZ, TRUSTEE                                   :
                                                         :
                              Plaintiff                  :
                                                         :
        v.                                               :
                                                         :
6130 WEST, LLC, HENRY P. ALFANO,                         :
JOHN DeVIRGILIS, ROBERT LAFLAR, and                      :
ANTHONY ALBERTO                                          :
                                                         :
                                                         : Adv. No. 11-745
                              Defendants                 :
_____                 :

## <u>OPINION</u>

By: Stephen Raslavich, Chief United States Bankruptcy Judge.

*Introduction*

        Before the Court is the Trustee's Motion for Leave to Amend Complaint.  The

Motion is opposed by the Defendants.  A hearing on the motion was held on May 3,

2012 after which the Court took the matter under advisement.  For the reasons set forth

below, the Motion will be granted in part and denied in part.  The Trustee may file an

amended complaint which is consistent with this ruling within 20 days of this date.[1]

---

        [1]Although this complaint alleges both core and noncore jurisdictional matters, the
Defendants do not consent to entry of a final judgment.  *See* Answer ¶ 1.

*Summary of Holding*

Count I - Declaratory Judgment

•    Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•    Holding: Plaintiff's request for leave to amend Count I will be denied because it fails to state a claim for a declaratory judgment.

Count II - Constructive Trust

•    Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•    Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a claim for a constructive trust.

•

Count III - Conversion

•    Basis for Contention: Defendants maintain that the proposed amendment to this count is prejudicial or legally deficient.

•    Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a claim for conversion.

Count IV - Injunction

•    Basis for Contention: Defendants maintain that the proposed amendment to this count is prejudicial or legally deficient.

•    Holding: Plaintiff's request for leave to amend Count IV will be denied because it fails to state a claim for an injunction.

Count V - Unjust Enrichment

•    Basis for Contention: Defendants maintain that the proposed amendment to this count is either time-barred, prejudicial or legally deficient.

•    Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a timely claim for unjust enrichment.

Count VI - Breach of Agreement (breach of contract)

•     Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•     Holding: Plaintiff's request for leave to amend Count VI will be granted as the count sufficiently states a claim for breach of contract.

Count VII - Avoidance (preferential and/or fraudulent transfers)

•     Basis for Contention: Defendants maintain that the proposed amendment to this count is either time-barred, prejudicial or legally deficient.

•     Holding: Plaintiff's request for leave to amend Count VII will be granted as the count sufficiently states a timely claim for avoidance.

Count VIII - Turnover

•     Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•     Holding: Plaintiff's request for leave to amend Count VIII will be denied because it fails to state a claim for turnover or for an accounting.

Count IX - Unconscionable and Void

•     Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•     Holding: Plaintiff's request for leave to amend Count IX will be denied because it fails to state a claim that the agreement may be voided as unconscionable.

Count X - Breach of Joint Venture/Fiduciary Duty

•     Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.

•     Holding: Plaintiff's request for leave to amend will be granted as the proposed amendment sufficiently states a claim for breach of fiduciary duty arising out of a joint venture.

*Allegations*

In June 2008, the Debtor was formed by its president and sole shareholder
Joseph Polutro to operate as a restaurant.  Amended Complaint, ¶ 4.  The
establishment which it would operate already existed along with a bar and gentlemen's
club located at 6130 W. Passyunk Avenue in Philadelphia.  *Id*. ¶¶ 4, 5  The existing
restaurant, bar and club were owned by the Defendants.  *Id*.  As part of a joint venture
agreement, the Debtor's principal, an executive chef, would renovate the existing
restaurant.  *Id*. ¶ 13  To that end, the Debtor invested $323,000 into the enterprise.  *Id*.
¶ 17  The Trustee's complaint alleges that the Defendants conspired to deprive the
Debtor of the profits from the operation of that restaurant.  *Id*. ¶¶ 14, 19.  The
Complaint calculates the Debtor's losses at more than $850,000.  *Id*. ¶ 21

On September 29, 2009, the Debtor commenced the instant bankruptcy case
and the Trustee was appointed on the same day.  On September 2, 2011, the Trustee
filed a ten count complaint against the Defendants alleging causes of action related to
breaches of the Joint Venture Agreement.  On December 2, 2011, the Defendants filed
an answer to the complaint.  The Court entered a pretrial scheduling order and
discovery commenced.  On April 2, the Trustee filed the instant motion to amend; on
April 23, the Defendants moved for summary judgment.  This ruling deals solely with
the Trustee's request.

*Applicable Legal Standard*

Rule 15[2] of the Federal Rules of Civil Procedure governs amendments of

---

[2]Made applicable by B.R. 7015.

4

pleadings:

>(a) **Amendments Before Trial**.
>
>(1) **Amending as a Matter of Course**. A party may amend its pleading once as a matter of course within:
>
>(A) 21 days after serving it, or
>
>(B) if the pleading is one to which a responsive pleading is required , 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) , (e) or (f) whichever is earlier.
>
>(2) **Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent *or the court's leave*. The court *should freely give leave when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added).  Where a party must obtain consent to amend, the Supreme Court has made it clear that the presumption in favor of leave is "a mandate to be heeded."  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  It furthers the policy of trying cases on their merits.  *Id*.  The precise delineation of when leave should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge.  *Rolo v. City Investing Co. Liquidated Trust,* 155 F.3d 644, 645 (3d Cir.1998).  This requires the Court to consider the positions of *both* parties and the effect that the request will have on them. 6 Charles Alan Wright, et al, *Federal Practice and Procedure* § 1487 (3d ed.)  For that reason, the Court may deny a request to amend when the moving party has demonstrated undue delay, bad faith or dilatory motive, or where the amendment would prejudice the opposing party.  *See Foman, supra, id.*; *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir.2002)  Equally, an amendment will be denied where it is

futile. *Id*. As the moving party, the Trustee bears the burden of proof in explaining the reasons for delay in seeking leave to amend. *See Payne v. City of Phila.,* 2005 WL 1863188, *2 (E.D.Pa. Aug.3, 2005)

*Proposed Amendment*

The motion seeks to add one defendant, to substitute another, and to correct a typographical error. The defendant to be added is New Club, LLC. The defendant to be substituted is the estate of one of the defendants since deceased. The typographical error sought to be corrected is an incorrect dollar amount in the demand.

*Defendants' Objection*

The Defendants do not object to all three proposed amendments. They point out that substitution of a decedent's estate does not require an amendment. *See* Defendants' Objection ¶ 10. Although Defendants make no mention of the Trustee's request to correct what is characterized as a typing error, the Court is empowered to conform the pleadings to the proofs. *See* F.R.C.P. 15(b)(2). It is only the amendment to add a defendant to which they object.

And on that score, the Defendants make two principal objections: one on limited and specific grounds and the other for general reasons. The *limited* challenge is as to Counts V and VII. Defendants contend that these counts are avoidance claims which are now time-barred. The *general* objection is made as to the remaining 8 counts and is two-fold: first, the proposed amendments fail to state a claim against New Club; and second, even if a claim is stated as to New Club, then the delay in bringing them now is unduly prejudicial.

6

*Timeliness of*
*Avoidance Claims*

Beginning with the two avoidance counts, the Court observes that a proposed

amendment which is untimely will be found to be futile.  *See Riad v. U.S.*, 2012 WL

986753, at *4 (E.D.Pa. March 22, 2012).  The Defendants say that it is too late to add

New Club to either Count V or VII because of the Bankruptcy Code's limitations for

avoidance claims.  Section 546(c) of the Code provides that:

> An action or proceeding under section 544, 545, 547, 548,
> or 553 of this title may not be commenced after the earlier
> of--
>
> (1) the later of-
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first
> trustee under section 702, 1104, 1163, 1202, or 1302 of this
> title if such appointment or such election occurs before the
> expiration of the period specified in subparagraph (A); or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).  Defendants explain that more than two years have passed since

the case was commenced and so these two counts are stale.[3]  Neither, Defendants

add, is that deadline subject to equitable tolling.  Finally, they say, if the Court does hold

that this provision may be equitably tolled, then the Trustee has not demonstrated that

his claim against New Club relates back in time for limitations purposes under Rule 15.

*See* Defendants' Objection, ¶¶ 17-36.

---

[3] That deadline was September 29, 2011.  There is no dispute that the deadline had
passed when the request for leave to amend was filed.

7

*Relation Back*

The same rule which provides for amendment of pleadings also preserves the

timeliness of certain amendments.[4]

> (c) *Relation Back of Amendments.*
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading
> relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations
> allows relation back;
>
> (B) the amendment asserts a claim or defense that arose
> out of the conduct, transaction, or occurrence set out--or
> attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the
> party against whom a claim is asserted, if Rule 15(c)(1)(B) is
> satisfied and if, within the period provided by Rule 4(m) for
> serving the summons and complaint, the party to be brought
> in by amendment:
>
> (i) received such notice of the action that it will not be
> prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought
> against it, but for a mistake concerning the proper party's identity.

*See* F.R.C.P. 15(c).  As the Third Circuit has explained, three conditions must be met in

---

[4]The Court is aware that the Federal Rules contain a specific rule regarding the joinder of parties.  Likewise made applicable by the Bankruptcy Rules, Rule 20 of the Federal Rules of Civil Procedure provides that persons ...may be joined in one action as defendants if the claims against all defendants arise out the same transactions or occurrences and common questions of law and fact will arise in the action.  *See* F.R.C.P. 20(a)(2).  Although this rule does not mention any limitations period, it is not excepted from the applicability of Rule 15(c)'s relation back requirement.  Thus, an amendment to join a defendant after the right to amend has passed must likewise relate back in time as required by Rule 15(c).  *See Commodity Futures Trading Ass'n v. American Metal Exch. Corp.*, 693 F.Supp. 168, 189 (D.N.J. 1988) (holding that leave to amend was required to add new parties.)  *See also* 4 Moore's Federal Practice, § 20.02[2][a][iii](stating that Rule 20 should be be subject to Rule 15(c)'s relation back requirement).

order for an amendment adding a party to relate back to the original complaint for

statute of limitations purposes:

> (1) that the claim against the newly named defendants arose out of the same conduct, transaction, or occurrence set forth in the original complaint,

> (2) that within the 120-day period for service of the summons and complaint, the newly named party have received notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits, and

> (3) that within that same time period of time, the newly named party must have known, or should have known, that "but for a mistake," he or she would have been named as a defendant in the first place.

*Singletary v. Pennsylvania Dept. of Corrections.,* 266 F.3d 186, 194 (3d Cir. 2001)  The

doctrine is distinct from "equitable tolling" whereby the reason that the plaintiff missed

the period is due to defendant's affirmative concealment or other circumstance beyond

plaintiff's control.  *Walker v. Lugan*, 922 F.2d 261, 263 (5th Cir. 1991).  If the proponent

of an amendment can show that its change would relate back to the original, timely-filed

claim, then it may be allowed on legal grounds without having to resort to equity.

*Same Transaction*

Beginning with commonality, the Court observes that the claims against

New Club do not amend the substantive claims against the other Defendants.  With

slight exceptions,[5] they remain as they were *verbatim*.  In fact, the proposed changes

---

[5]The amended complaint would increase the amount of money that the Debtor invested into the enterprise. *Compare* Complaint, ¶15 with Amended Complaint, ¶ 17. It also states that there may be more than one version of the parties' agreement.  *Compare* Complaint, ¶¶ 20-21 with Amended Complaint, ¶ 23

do no more than add New Club to the universe of already existing defendants.  Only the

number of persons in the definition of "Defendants" has increased from five to six.

There are, then, simply no material changes to the allegations of fact or conclusions of

law.

*Notice*

As to whether New Club received notice of the suit during the summons service

period, the Trustee maintains that New Club received both actual as well as

constructive notice.  Motion ¶ 25.  Actual notice occurred, explains the Trustee, by

virtue of New Club having shared the same address as two of the defendants.  *Id*. 26.

Constructive notice may also be found from the fact that New Cub and the existing

Defendants share the same attorney.  *Id*. 27.  Finally, the Trustee adds that New Club

is directly involved with Defendants business, i.e., "inextricably intertwined," such that

notice may likewise be inferred.  *Id*. 30.

For their part, Defendants raise two points: first, the fact that New Club shared

the same registered office address with other Defendants proves nothing.  No agency

relationship is alleged.  Objection ¶ 27.  Second, there is no evidence of a shared

attorney during the 120 day summons period.  New Club explains that the Weir firm had

not yet entered its appearance for New Club.  *Id*. 29.

For purposes of the relation back doctrine, notice can be "actual, constructive, or

imputed."  *Singletary*, 266 F.3d at 195.  The Third Circuit considers "imputed" notice to

be a form of "constructive" notice.  *In re Color Tile, Inc*., 475 F.3d 508, 512 (3d Cir.

2007).  The Third Circuit has continued to adhere to the proposition that imputed notice

falls under the doctrine of constructive notice, so that imputed notice under Rule

15(c)(3) requires either a shared attorney or an identity of interest. *Garvin v. City of

Phila.*, 354 F.3d 215, 222-223 (3d Cir. 2003).

*Shared Attorney*

Where an existing defendant and a party to be added share the same counsel,

constructive notice of the suit upon the latter party will be found to exist. *See Miller v.*

*Hassinger,* 173 Fed. App'x 948, 956 (3d Cir.2006) (citing *Singletary v. Pa. Dept. of*

*Corrections,* 266 F.3d 186(3d Cir.2001).   Under this theory, "when an originally named

party and the party who is sought to be added are represented by the same attorney,

the attorney is likely to have communicated to the latter party that he may very well be

joined in the action." *Singletary,* 266 F.3d at 196.   As New Club correctly points out, the

record does not demonstrate that the firm which represents the original defendants

(Weir & Partners), also represented New Club when the summons was pending.   As of

the filing of its Objection, New Club goes on, the Weir firm had yet to enter its

appearance on New Club's behalf.   Without more, then, the Court cannot find that New

Club had constructive notice of the suit via common counsel.

*Identity of Interest*

Present parties, however, may be sufficiently related to future parties such that

notice of suit may likewise be imputed to the latter.   Referred to as "identity of interest,"

the newly named Defendant and the original Defendants may be so closely intertwined

in their business operations or other activities that the filing of suit against one

effectively provides notice of the action to the other. 6A Charles Alan Wright et al.,

*Federal Practice And Procedure* § 1499 (3d ed.)  The Supreme Court has endorsed this

method of imputing notice for Rule 15(c)(3).  *See Schiavone v. Fortune*, 477 U.S. 21,

29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) ("Timely filing of a complaint, and

notice within the limitations period to the party named in the complaint, permit

imputation of notice to a subsequently named and sufficiently related party."); *see also*

*Singletary*, 266 F.3d at 198 (remarking on Supreme Court's endorsement of this

method).

The Trustee sees an identity of interest between New Club and Defendant 6130

West LLC in their shared address.  6130 West has its registered office address at 1707

Rittenhouse Square, Philadelphia.  This defendant was served at that address.  *See*

Executed Summons Service, Docket #3.  New Club also has its registered office

address at 1707 Rittenhouse Square in Philadelphia.  *Compare* Department of State

filing for defendant 6130 West LLC (Ex. A to Motion) with same document for New Club

LLC (Ex. B to Motion).  While there is no denying that the address is the same, that is

not necessarily a guarantee that New Club learned of the suit when 6130 West was

served with the summons.  There is no mention in the record as to whether the parties

shared the same registered agent who would have been duty bound to inform New

Club of the suit.  In short, the fact of the common address is probative but inconclusive.

What helps the Trustee's case is what is attached to his Response.  Exhibit A to

that document is a lease between Passyunk Avenue Realty Enterprises LLC and New

Club dated October 2008.  It represents the leasehold of the real estate upon which is

located the bar, nightclub and restaurant of the joint venture; that is, 6130 West

Passyunk Avenue.  New Club is the lessee under the lease.  Importantly, Defendant

John DeVirgilis executed the lease on behalf of New Club as a member.  *See* Trustee's

Response, Ex. A.  Mr. DeVirgilis was also served with the Complaint at that same

address (1707 Rittenhouse Square, Philadelphia) as was 6130 West.  *See* Executed

Summons Service, Docket #6.  Thus, the record demonstrates that a principal of New

Club is also among the original defendants served with the Complaint within the 120

days summons period.  This constitutes timely, constructive notice upon New Club for

purposes of relation back under Rule 15(c).

*Expectation*

Lastly, the Court turns to the question of whether New Club ought to have

expected to have been named as a defendant earlier but for a mistake.  At the hearing,

New Club's counsel argued that the Trustee had not been "mistaken" in failing to name

New Club sooner; rather, his lack of knowledge about New Club simply renders the rule

inapplicable.  Transcript of Hearing (T-), 5/3/12, 10.  A leading commentator explains

that in this context the classic example of mistake is misnomer; that is, when a plaintiff

misnames or misidentifies a party in its pleadings.  3 *Moore's Federal Practice Civil* §

15.19[3][d].  However, mistake may also include the failure to name a party altogether:

> Relation back is not limited to the strict misnomer situation,
> however, provided the requirements of the rule are satisfied.
> In applying the rule, the focus is on the party to be brought in
> by the amendment. Relation back applies if that party knew
> or should have known (during the time allowed by Rule
> 4(m)) that it would be named but for an error. The rule asks
> what the defendant knew or should have known during this
> period, not what the plaintiff knew or should have known at
> the time of filing the original complaint.  This approach,
> announced by the Supreme Court in *Krupski v. Costa*

*Crociere SpA,[6]* resolved a circuit split. Before *Krupski,* many courts had held that a lack of knowledge as to who the correct party was did not constitute a "mistake," so that a plaintiff who did not know the identity of the defendant could not rely on relation back.  Other courts disagreed with this view, finding no linguistic basis for the distinction in the rule.  These courts held that both misnomer and lack of knowledge of the proper defendant could constitute a "mistake concerning the proper party's identity" as required by Rule 15(c)(1)(C)(ii).

In *Krupski*, the Supreme Court sided with this second, better reasoned, line of authority. Information in the plaintiff's possession is relevant to the relation back inquiry only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity.  For this purpose, *knowledge of a party's existence may not be equated with the absence of mistake*. A plaintiff who knows of a person's existence may still be mistaken as to the person's status, or as to the role the person played in the transaction or occurrence, or in other ways.  Moreover, the reasonableness of the mistake is not at issue; the relevant inquiry is whether the party to be brought in knew that the action would have been brought against it but for the mistake, reasonable or not.

*Id*. (emphasis added).  *See also Arthur v. Maersk, Inc*., 434 F.3d 196, 208 (3d Cir. 2006) (holding that mistake, for purposes of this rule, may result from lack of knowledge)  Based on the record, New Club should have expected to be a defendant in this suit.  New Club is the lessee of the real property on which the restaurant is located.  *See* Lease attached to Trustee's Response.  Defendants themselves contend that the Debtor received prepetition payments from New Club so the parties are in some degree

---

[6]*Krupski v. Costa Crociere SpA*, -- U.S. --, 130 S. Ct. 2485, 177 L. Ed. 2d 48, 57-58 (2010) .

of privity.  They also share a common business address as discussed, *supra*.  All of this suggests that the proposed amendment is not a complete surprise to New Club. Having found that all three conditions for applying this rule's relation back doctrine exist, the Court finds the addition of New Club to the suit is not time-barred.

*Delay and Prejudice*

As to the other 8 counts, Defendants argue first that the delay in bringing such claims against New Club is unfair.  The Third Circuit has emphasized that prejudice to the non-moving party is the touchstone for the denial of an amendment.  *Arthur v. Maersk, Inc*., 434 F.3d at 204.  That being said, the non-moving party cannot merely claim prejudice, but "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (citations omitted).  In other words, the Defendants bear the burden of proof as to prejudice*.  See AMS Construction Co. v. Reliance Insurance Co.*, 2006 WL 1967336, at *3 (E.D.Pa.July 12, 2006)  In and of itself, delay does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue' placing an unwarranted burden on the court and may work prejudice to the adversary." *See Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001)  A potential defendant is prejudiced from delay if it "must set about assembling evidence and constructing a defense when the case is already stale."  *Curry v. Johns-Manville Corp.*, 93 F.R.D. 623, 626 (E.D.Pa.1982).

Defendants identify unfairness in the fact that discovery has just completed and that they have filed a Motion for Summary Judgment.  Defendants' Objection, ¶ 38. Allowing the Trustee to add a new defendant, they say, would cause them to incur significant costs and delay trial.  *Id.* ¶ 39.  At the inception of the bankruptcy, Defendants contend, the Trustee failed to promptly use his investigatory powers which would have revealed New Club's identity sooner.  *Id.* ¶ 41.  Available information showed that the Debtor was receiving checks from New Club during the 3 months prior to bankruptcy.  *Id.* ¶ 40.  It would, then, be unfair, the Defendants conclude, to allow the Trustee to add New Club at this late stage of the case.

The Trustee's rejoinder is that he made numerous requests of the Debtor for its books and records.  Trustee's Response, ¶ 15.  He explains that the Debtor's principal testified that the books and records were kept at the restaurant and that because the Defendants locked him out of the restaurant he could not deliver that information to the Trustee.  *Id.* ¶ 16.  When the Trustee finally did get the records, they contained no mention of New Club.  *Id.* ¶ 15.   He first learned of New Club, the Trustee explained, when he received the Defendants' initial disclosures in January 2012.  Motion, ¶ 14. To the Trustee's mind, if there is any delay here, it is not on his account; he was working as diligently as possible given existing restraints.  Response, ¶¶ 15-17.

The Court finds neither delay on the Trustee's part nor any prejudice assuming such delay were demonstrated.  The record shows that his attempts at investigation were frustrated by the very persons claiming prejudice.  And the contention that the Debtor's receipt of checks from New Club should have put him on notice of the claims against New Club are an exaggeration.  It is very possible that the Debtor received

prepetition checks from a number of sources.  But even assuming that the Trustee

should have probed deeper and sooner into Debtor's affairs, the Court does not see

how the Defendants are harmed as a result.  The proposed amendment would not

change the factual basis or legal theories; only New Club is added to the already

existing universe of defendants.  And because there are no material substantive

changes to either the allegations or law, it is hard to see how this will place on the

Defendants any additional burden of trial preparation.  Moreover, New Club and the

other defendants share the same counsel so the learning curve—to the extent one

exists—cannot be all that steep.  But even assuming it is, the Defendants will be

granted more time to prepare if it is needed.  In short, the Court sees no risk of harm to

the Defendants in granting leave.

*Failure to State a Claim*

Alternatively, Defendants maintain that adding New Club would be futile because

no viable claim is stated against it.  An amendment is futile if it would not survive a

motion to dismiss for failure to state a claim upon which relief could be granted.  *See In

re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  In

determining whether the amendment would be futile, the district court applies the

standard for motions under Fed.R.Civ.P. 12(b)(6) ("failure to state a claim upon which

relief may be granted); *see id.*  Accordingly, the Court accepts as true all of the

allegations contained in the complaint and draws reasonable inferences in favor of the

plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S.Ct. 2197, 2200, 167

L.Ed.2d 1081 (2007) (per curiam).  To survive dismissal, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on

17

its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

(2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007)).

*Declaratory Judgment*

The Court begins with the request for a declaratory judgment.  Although the

Complaint does not state the *statutory* predicate for declaratory relief,[7] federal courts,

including bankruptcy courts, may grant such relief pursuant to the Declaratory

Judgment Act ("the Act"), 28 U.S.C. § 2201.  That Act provides, in relevant part, that

"[i]n a case of actual controversy within its jurisdiction, ... any court of the United States,

---

[7]Pennsylvania is one of 43 states to have adopted the Uniform Declaratory Judgment Act.  *See* 42 P.S. Pt. VII Ch. 75.  The act provides that "[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 P.S. § 7532.  As pertains to the case *sub judice*, the act also provides that "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."  42 P.S. § 7533.  The Pennsylvania act serves much the same purpose as the federal act.  The purpose of awarding declaratory relief is to settle and make certain rights or legal status of parties.  *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 519, 414 Pa.Super. 85, 109 (Pa.Super.1992), appeal denied 637 A.2d 285, 536 Pa. 625, reconsideration denied, certiorari denied 115 S.Ct. 904, 513 U.S. 1112, 130 L.Ed.2d 788; *see also Curtis v. Cleland*, 552 A.2d 316, 318, 122 Pa.Cmwlth. 328, 331 (Pa.Cmwlth.1988) (explaining that the Declaratory Judgments Act is remedial in nature and is intended to provide relief from uncertainty and establish various legal relationships).  A declaratory judgment is not appropriate to determine rights in anticipation of events that may never occur, but is appropriate where there is imminent and inevitable litigation.  *Pennsylvania Turnpike Com'n v. Hafer*, 597 A.2d 754, 756, 142 Pa.Cmwlth. 502, 507 (Pa.Cmwlth.1991) *Shaffer-Doan ex rel. Doan v. Com., Dept. of Public Welfare*, 960 A.2d 500, 517 n.32 (Pa.Cmwlth. 2008) ("Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status, or other relation, and they may not be used to search out new legal doctrines.")  *Crown Cork & Seal Co., Inc. v. Borden, Inc.*, 779 F.Supp. 33, 35 (E.D.Pa.1991) (inasmuch as request for declaratory relief constituted "procedural fencing" and litigation costs manufacturer sought to avoid by suit were not the type of "uncertainty and insecurity" that Acts were intended to relieve); see also 11 *Standard Pa. Prac. 2d* § 66:4.

upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such a declaration, whether or not further relief

is or could be sought." 28 U.S.C. § 2201.  When there is an actual controversy between

the parties, the Act allows a court to settle the parties' respective rights, even before

there is a violation of law, exercise of right, or breach of duty.  *In re Downingtown Indus.*

*& Agr. School*, 172 B.R. 813, 819 (Bankr.E.D.Pa.1994); *see also Océ-Office Systems,*

*Inc. v. Eastman Kodak Co.,* 805 F.Supp. 642, 646 (N.D.Ill.1992) ("Resolving the

uncertainty and anxiety resulting from a looming lawsuit is, indeed, the purpose of the

Declaratory Judgment Act.").  A declaratory judgment may well be appropriate in the

context of a contract dispute even before an actual breach of the contract occurs.  *See,*

*e.g., Hardware Mutual Casualty Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir.1949) ("The

purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they

ripen into violations of law or a breach of some contractual duty."); *American Type*

*Founders, Inc. v. Lanston Monotype Machine Co.,* 137 F.2d 728, 729 (3d Cir.1943)

(court "entertain[ed] no doubt that an actual controversy exist[ed] within the purview of

the Declaratory Judgment Act" where plaintiff sought declaration of right to cancel

contract while defendant sought its enforcement);  *Lehigh Coal & Navigation Co. v.*

*Central R.R. N.J.,* 33 F.Supp. 362, 365 (E.D.Pa.1940) ("Construction and interpretation

of written instruments ... is the principle function of a declaratory judgment

proceeding.").

    The Act is intended to address uncertainty as to legal rights between the parties

towards expediting a conclusion of a pending dispute or avoiding one altogether.  The

parties here, however, are well past that point; they are engaged in full-blown litigation.

Each side is clear as to what its respective rights are in their joint venture and that is

with regard to profits as well as personal property.  Adjudication of these issues will

perforce determine the rights of each party.  In other words, the request for declaratory

relief is, at this juncture, moot.

*Constructive Trust*

Count II requests that the Court impress upon the restaurant and its proceeds a

constructive trust.  Under Pennsylvania law, "[a] constructive trust arises where a

person who holds title to property is subject to an equitable duty to convey it to another

on the ground that he would be unjustly enriched if he were permitted to retain it." *Kern*

*v. Kern,* 892 A.2d 1, 8 (Pa.Super. 2005).  A constructive trust is not really a trust at all

but rather an equitable remedy.  *Buchanan v. Brentwood Savings and Loan Ass'n*, 457

Pa. 135, 150, 320 A.2d 117, 126 (1974).  Like all remedies in equity, it is flexible and

adaptable.  *Id*.  Generally, however, an equitable duty to convey property to another

arises only in the presence of fraud, duress, undue influence, mistake, or abuse of a

confidential relationship.  There is, however, no rigid standard for determining whether

the facts of a particular case require a court of equity to impose a constructive trust; the

test is merely whether unjust enrichment can be avoided.  *Koffman v. Smith,* 453

Pa.Super. 15, 32, 682 A.2d 1282, 1291 (Pa.Super.1996).  The presumption of right in

an action to impose a constructive trust lies in favor of the one in whom legal title is

situated. *In re McKay*, 110 B.R. 764, 770 (Bankr.W.D.Pa.1990) (*citing Metzger v.*

*Metzger*, 338 Pa. 564, 14 A.2d 285 (1940)).

20

The complaint alleges that the restaurant is the property of the debtor; that it was wrongly taken from the debtor; that the money it generated was likewise wrongly taken; and that under the circumstances the defendants are unjustly profiting from their wrongful conduct.  As a matter of pleading, this is enough to state a viable claim for a constructive trust.

*Conversion*

The same may be said of the conversion claim in Count III.  Conversion is the "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa.Super.2000).  Again, the restaurant is alleged to be the estate's property.  Notwithstanding, such property is alleged to have been wrongfully taken from the Debtor when the Defendants locked out Debtor's principal.  These circumstances suggest a lack of consent.  The motion to dismiss the conversion count, therefore, will likewise be denied at this juncture.

*Injunctive Relief*

Count IV seeks to enjoin the Defendants from the restaurant.  An injunction is a court order that can prohibit or command virtually any type of action.  *Big Bass Lake Comm. Ass'n v. Warren*, 950 A.2d 1137, 1144 (Pa.Commw.2008).  It is an extraordinary remedy that should be issued with caution and "only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable." 15 *Standard Pennsylvania Practice 2d*, § 83:2 (2012*) citing Schaeffer v. Frey*, 403 Pa. Super 560, 589 A.2d 752 (1991).  The required elements of

injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested.  *Id.* at § 83:19 *citing Unified Sportsmen of Penna. v. PGC*, 956 A.2d 1120 (Pa.Commw.2008).  Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977).  It has often been said that "the decree of a chancellor is of grace, not of right. This does not, of course, mean that decree is to be granted or withheld merely at the whim or caprice of the chancellor." *Asbury v. Caroll,* 54 Pa.Super. 97, 1913 WL 4747, at *3 (Dec. 17, 1912).  The power to grant or to refuse an injunction "rests in the sound discretion of the court under the circumstances and the facts of the particular case...." *Rick v. Cramp,* 357 Pa. 83, 91, 53 A.2d 84, 88 (1949).

The amended complaint alleges generally that the Trustee will be left with no adequate remedy at law to recover the restaurant or its proceeds should the Defendants not be enjoined.  Amended Complaint ¶ 48  This, however, begs the question why this is so.  To be sure, assuming that the Trustee is correct regarding ownership of the establishment, there is a clear right to *some* measure of relief. However, that does not demonstrate that *extreme* relief is warranted.  There is simply no explanation as to urgency.  Neither is there an allegation as to why more harm would result from *not* enjoining the Defendant.  In short, even under the relatively liberal pleading standard, this claim is insufficient for stating a claim for an injunction. Accordingly, it will be dismissed but without prejudice.

*Unjust Enrichment*

Count V is entitled Unjust Enrichment.  A claim for unjust enrichment is not materially different from the count requesting imposition of a constructive trust.  An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Sevast v. Kakouras,* 591 Pa. 44, 915 A.2d 1147, 1153 n. 7 (2007).  "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.Super.2001).  The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa.Super.2008).  Given the allegation that the restaurant was wrongly taken from Debtor and that the Defendants are profiting from this wrongdoing, Count V states a claim for unjust enrichment.

*Breach of Agreement*

Count VI alleges the existence of an agreement between the parties, the Debtor's full performance, breaches by Defendants of such agreement, and injury resulting from the Defendants' failure to perform.  *See* Amended Complaint ¶¶ 57-62. Although styled as Breach of Agreement, Count VI alleges basic common law breach of contract.  To state a claim for breach of contract, "a plaintiff must plead: 1) the

existence of a contract, *including its essential terms*; 2) a breach of duty imposed by the

contract; and 3) resultant damage." *Kane v. State Farm & Cas. Co.,* 841 A.2d 1038,

1042 (Pa.Super.2003)(emphasis added).

Count VI pleads the existence of a contract: the parties' relationship is based

upon the joint venture agreement.  It also pleads the Defendants'[8] breach of that

agreement: they allegedly conspired to lock Debtor out of the premises.  As a result of

that breach, the count goes on, the Debtor suffered damages of more than $800,000.

Where the count becomes somewhat unclear is as to the material (i.e., essential) terms

of the agreement.  Admittedly, while the Amended Complaint never expressly explains

what the Debtor's "obligations" under the agreement were (*see* Amended Complaint, ¶

13) it can be inferred that the Debtor was required to develop the restaurant through its

principal's expertise, investment of capital and other property.  On the other side of the

coin, it appears that the Defendants provided the existing restaurant which would be

renovated.[9]  Given that the joint venture contemplated the addition of the Debtor's

restaurant to the Defendant's already existing bar and night club, all parties envisioned

making money from the arrangement.  The Debtor would get the profits from the

restaurant, and the Defendants expected increased profits from the existing bar and

night club as a result of the restaurant's synergistic effect.  To be sure, having a copy of

---

[8]New Club also maintains that it cannot be guilty of breach of contract because it was not in existence until after the joint venture was entered into.  T-8.  In his amendment, the Trustee alleges that various versions of the agreement have been identified.  Amended Complaint ¶ 22.  That, then, is a factual matter which may be addressed better on summary judgment.

[9]The restaurant is located on the real property which New Club holds as tenant. *See* Ex. A to Trustee's Response.

the parties' agreement attached to the complaint might have clarified all of this, but this seems a fair reading of what is alleged. Accordingly, the Court finds that a breach of contract has been stated.

*Constructive Fraudulent Transfer*

Count VII is entitled "avoidance" and seeks to recover transfers to the Defendants on a theory of "constructive" fraud:[10]

> The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> * * *
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

---

[10]Interspersed throughout this count are references to a preferential transfer. *See e.g.* ¶¶ 67, 71. This perhaps explains why the Count is generally entitled Avoidance as opposed to Fraudulent Transfer. In any event, the allegations do not support a preference claim chiefly for the reason that the Amended Complaint does not allege an antecedent debt, a required element under § 547. Accordingly, the count will be judged on whether it states a fraudulent transfer.

*See* 11 U.S.C. § 548(a)(1)(B); *see also In re D'Ambrosio*, 452 B.R. 562, 571

Bankr.E.D.Pa. 2011) (listing elements)  Typically, where a count alleges fraud, a

heightened standard of pleading is required.  *See Saporito v. Combustion Eng, Inc*.,

843 F.2d 666, 675 (3d Cir.1988).  However, courts in this circuit continue to follow the

rule that  "[a] trustee is generally afforded greater liberality in pleading fraud, since he is

a third-party outsider to the debtor's transactions.  Nevertheless, these relaxed Rule

9(b) requirements require the trustee to do more than merely identify the allegedly

fraudulent transfers." *Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.),* 423 B.R. 76,

85 (Bankr.D.Del.2010) (footnotes omitted); *see also Moratzka v. Pomaville (In re*

*Pomaville),* 190 B.R. 632, 637 (Bankr.D.Minn.1995) (explaining that "unlike the usual

civil case where a plaintiff at least has the advantage of being a party to the underlying

transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor)

to provide the information necessary to uncover avoidable transfers.")

Here, the complaint alleges an interest in the property; to wit, the restaurant.

The Debtor is alleged to have put in upwards of $323,000 into that business.  Amended

Complaint ¶ 17.  A transfer is likewise alleged notwithstanding that the business is

alleged to have been forcibly taken from him.  *Id*. ¶ 19.  "Transfer" is broadly defined in

the Bankruptcy Code to include *involuntary* transfers as well as voluntary.  *See* 11

U.S.C. § 101(54)(D); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211-212 (3d

Cir.2006) (noting broad definition of transfer) and *see also In re Walker*, 2005 WL

6522758, at *10 (Bkrtcy.E.D.Pa.May 31, 2005) (noting inclusion of involuntary transfers

in definition)  The complaint alleges that such transfer occurred while the debtor was

insolvent.  Amended Complaint ¶ 69  As to exactly when the "transfer" occurred, the

Amended Complaint is not specific but it can be inferred that it occurred within the two

years prior to bankruptcy (9/23/07 to 9/23/09).  It is alleged that the parties

memorialized their agreement in June 2008 (¶22) so it must have occurred after that

date.  Finally, because the Debtor has not received any payment from the Defendants,

(*Id*. ¶ 69), there was no exchange of reasonably equivalent value.   On a pleading level,

and given the not uncommon disadvantage to which a trustee is subject regarding a

debtor's prepetition history, these allegations—albeit somewhat thin—are enough to

survive a motion to dismiss even under the heightened pleading standard applicable to

fraud*.*

*Turnover and Accounting*

Count VIII demands from the Defendants that they turn over the restaurant and

Debtor's membership interest in the joint venture.  Amended Complaint, ¶ 77.  The

same count also demands an accounting of all proceeds from the restaurant.  *Id*. ¶ 78

The Bankruptcy Code provides that property of the estate shall be turned over to

the trustee.  *See* 11 U.S.C. § 542(a).  The essential element of a turnover action is that

the property sought by the trustee is, in fact, property of the estate*.*  *In re White*, 389

B.R. 693, 699 (9th Cir. BAP 2008).  However, a turnover action is not proper where a

bona fide dispute exists.  *See In re Allegheny Health Education and Research*

*Foundation*, 233 B.R. 671, 677 (Bankr.W.D.Pa.1999) *citing U.S. v. Inslaw, Inc.,* 932

F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law that turnover actions under § 542

cannot be used "to demand assets whose title is in dispute") *see also In re 2045*

27

*Wheatsheaf Associates,* 1998 WL 910228 *10 (Bankr.E.D.Pa.1998) (quoting *In re*

*Johnson,* 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under §

542 of the Code 'is not intended as a remedy to determine disputed rights of parties to

property. Rather, it is intended as a remedy to obtain what is acknowledged to be

property of the bankruptcy estate.' "); *In re FLR Company, Inc.,* 58 B.R. 632, 634

(Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the

property being sought is clearly the property of the Debtor but not in the Debtor's

possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine

the rights of the parties in legitimate contract disputes.")  The Third Circuit has

explained that a "bona fide dispute" exists only when there is "a genuine issue of

material fact that bears upon the debtor's liability, or a meritorious contention as to the

application of law to undisputed facts." *B.D.W. Associates v. Busy Beaver Bldg. Ctrs.,*

865 F.2d 65, 66 (3d Cir.1989) (quoting *In re Busick,* 831 F.2d 745, 746 (7th Cir.1987)

(quoting *In re Lough,* 57 B.R. 993, 997 (Bankr.E.D.Mich.1986))).

The Trustee, as expected, alleges in this regard that the restaurant and the

Debtor's interest in the venture is property of this bankruptcy estate.  Amended

Complaint, ¶¶ 23, 26.  Yet even taking these allegations as true, there is no denying

here that the Defendants dispute the Trustee's claims to the restaurant.  The

Defendants have already filed an answer to the complaint denying the right to turnover

as well as a motion for summary judgment which contests the Trustee's premises.

Accordingly, the Trustee's request for leave to plead a turnover count must be denied.

The same result must obtain as to the demand for an accounting.  Section 543

of the Bankruptcy Code requires any *custodian* of estate property to file an accounting

of property of the debtor or proceeds.  11 U.S.C. § 543(b)(2) (emphasis added).  The

Code defines "custodian" as

> (A) receiver or trustee of any of the property of the debtor,
> appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of
> the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under
> a contract, that is appointed or authorized to take charge of
> property of the debtor for the purpose of enforcing a lien
> against such property, or for the purpose of general
> administration of such property for the benefit of the debtor's
> creditors.

11 U.S.C. § 101(11).  *See In re Mushroom Transportation Co., Inc.*, 366 B.R. 414, 437

(Bkrtcy.E.D.Pa.2007) *quoting* H.R.Rep.No. 95-595, 95th Cong., 1st Sess. 310

(1977)(observing that legislative history explains that the term "custodian" refers to

"prepetition liquidator of debtor's property, such as assignee for benefit of creditors, a

receiver of debtor's property, or administrator of debtor's property as well as other

officers of the court if their function is substantially similar to those of a receiver or

trustee")  The Defendants are not alleged to have any such status other than joint

venturer with the Debtor.  They are neither receiver, assignee nor trustee.   For that

reason, no claim for an accounting under § 543 can be stated and leave to amend this

count will be denied.


*Unconscionable and Void*

It is alleged in Count IX that the conduct of the Defendants constitutes grounds

for voiding the agreement outright.  Simply put, says the complaint, the Defendants

have acted unconscionably thereby entitling the Trustee to avoidance.

A contract or term is unconscionable, and therefore avoidable, where there was

a lack of meaningful choice in the acceptance of the challenged provision and the

provision unreasonably favors the party asserting it.  *See Denlinger, Inc. v. Dendler*,

415 Pa.Super. 170, 177, 608 A.2d 1061, 1068 (Pa.Super.1992) citing *Witmer v. Exxon*

*Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981)).  The aspects entailing lack of

meaningful choice and unreasonableness have been termed procedural and

substantive unconscionability, respectively.  *See Clerk v. First Bank of Delaware,* 735

F.Supp.2d 170, 181 (E.D.Pa. 2010)*; and see generally* 17A Am.Jur.2d Contracts § 278

(2006).  Here, there is no allegation that the parties somehow bargained from unequal

footing.  The term joint venture is used throughout the complaint which suggests that

they negotiated at arms length.  And given that the pleading neither attaches the

agreement nor states its terms, the Court cannot tell if it is unreasonably skewed in

Defendants' favor.  For both of these reasons, Count IX fails to plead a claim of

unconscionability.

*Breach of Joint Venture Fiduciary Duties*

Count 10, the last count, alleges a breach of the parties' joint venture agreement

and the corresponding fiduciary duty.  Where parties have entered into a joint venture,

there exists a fiduciary duty between them*.  ITP, Inc. v. OCI, Co. Ltd*, 2012 WL

1019604, at *6 (E.D.Pa. Mar 26, 2012)(stating that "a joint venturer owes a fiduciary

duty of the utmost good faith and must act toward his associate with scrupulous

honesty").  In order to sufficiently plead a claim for breach of joint venture, a plaintiff first

must plead the elements of a joint venture.  *AT&T Corp. v. Synet, Inc.*, 1997 WL

109969 at *6 (N.D.Ill. Feb. 13, 1997).  As one Pennsylvania court has explained, a joint

venture is a species of contract which is influenced by partnership principles:

> A joint venture is not a status created or imposed by law; it is
> a relationship voluntarily assumed and arising wholly from
> contract. 2 Williston on Contracts 557, § 318A (3rd ed.
> 1959). Whether persons have engaged in it must depend
> primarily upon their intention as expressed in their
> agreement and the construction they have placed upon it.
> "To constitute a joint venture certain factors are essential:
> (1) each party to the venture must make a contribution, not
> necessarily of capital, but by way of services, skill,
> knowledge, materials or money; (2) profits must be shared
> among the parties; (3) there must be a 'joint proprietary
> interest and right of mutual control over the subject matter'
> of the enterprise; (4) usually, there is a single business
> transaction rather than a general and continuous
> transaction." *McRoberts v. Phelps,* 391 Pa. 591, 599, 138
> A.2d 439, 443-444 (1958) . A joint venture partakes in many
> ways of a partnership, the principal difference being that it
> usually, though not necessarily, applies to a single
> transaction instead of being formed for the conduct of a
> continuing business.  *West v. Peoples First National Bank &
> Trust Co.,* 378 Pa. 275, 281-282, 106 A.2d 427, 431 (1954).
>
> The rights, duties, and obligations of joint venturers, as
> between themselves, depend primarily upon the terms of the
> contract by which they assume that relationship.  46
> Am.Jur.2d, Joint Ventures § 36.

*See Snellbaker v. Herrmann,* 315 Pa.Super. 520, 526, 462 A.2d 713, 716 (1983);

*Bernstein v. Balli Steel, PLC*, 2008 WL 862470, at *3 (E.D.Pa. March 31, 2008)

Although the joint venture agreement is neither attached to the complaint nor

specifically referenced, some conclusions may be drawn from what is alleged.

Beginning with member contributions, the complaint specifically sets forth only what

Debtor put into the enterprise.  No specific mention is made of what the Defendants'

contribution was; however, it seems clear that they "contributed" the real estate for what

would become the "entertainment facility," i.e., restaurant, bar and night club.  The

same can be said about profits.  The Debtor alleges that it was promised the profits

from the restaurant and given a say in how it was to be managed.  Amended Complaint

¶ 92  As to profits for the Defendants, all that is said is that they had an "expectation" of

profits.  *Id*. ¶ 88  Notwithstanding, it is again fair to infer that if the Debtor would get the

profits from the restaurant, then the Defendants would get the profits from the existing

bar and club.  As explained, *supra*, the Defendants counted on enhanced business at

their bar and nightclub from the new and refurbished restaurant next door.  As to joint

interest and control, both the Debtor and the Defendants are alleged to have a common

interest in the enterprise and a right to govern the conduct of the other members.  *Id*.

¶¶ 87, 90  Finally, the joint venture is limited to the creation of the "entertainment

facility;" to wit, the renovated restaurant along with the existing club and bar; no other

projects were contemplated.  In sum, while these are not the most comprehensive

allegations of a joint venture, they will suffice for purposes of a motion to dismiss.  The

corollary to that finding is that an allegation that one or more of the Defendants

breached that agreement means that they are guilty of a fiduciary failing as well.

*Summary*

The Plaintiff's motion for leave to amend the Complaint will be granted in part

and denied in part without prejudice.  Leave is granted to amend counts II, III, V, VI, VII,

and X as proposed.  The remaining counts fails to state a claim upon which relief may

be granted and will be dismissed without prejudice.

32

An appropriate Order follows.

By the Court:

_____

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>June 14, 2012</u>